And of course, Ms. Sullivan, we understand that if we go your way on the first case this month, it's easy. But let's get to the merits of the argument. Thank you, Your Honor. Kathleen Sullivan for Appellant, Spitz Technology Corporation. And as you say, Chief Judge Prost, if you rule for us and reverse on claim construction on Genova Review, Nobel is not the prevailing party under Section 285, and the Attorney's Fee Award goes away. Same thing if you reverse the summary judgment of non-infringement on the ground that the prosecution history estoppel argument was legally erroneous, and we should have a chance to put in evidence on DOE, which we were denied at summary judgment. Okay. On this Attorney's Fee Award, it seems like the judge split the baby, gave a very considered analysis. He didn't assess all of the attorney's fees. He stopped after claim construction. Very strong discretionary standard of review. How do you get around that? Understood, Your Honor. But with respect, we think that even though it was considered, the district judge's award of the attorney's fees for the time period after claim construction was legally erroneous, and here's why. We think that, first of all, you've made clear that an adverse claim construction does not necessarily shut down a case. An adverse claim, it happens all the time in the district court. There's a very high reversal rate for claim construction on Genova Review in this court. And if you were to essentially hold patentees to a penalty of attorney's fees every time they persist after an adverse claim construction, it would deprive you of appropriate appellate review of claims in context of infringement arguments. That's point one. Point two is, the patentee, even after octane... There are two different ways to persist. One is accepting the claim construction you disagree with, preserving your right to appeal, and going on with the case, which normally wouldn't garner attorney fees, and refusing to accept the claim construction and arguing that you win based upon a claim construction that the district court rejected. And isn't the latter what you did here? And why isn't that subject to an exceptional circumstance? So, Your Honor, we think that, first of all, we shouldn't have to stipulate to final judgment in order to appeal the claim construction. I completely agree with you, but once you get an adverse claim construction, you can say, we disagree with this, we're going to preserve our right to appeal, but we're still going to go forward and argue why we win under your claim construction. Correct, Your Honor. If you don't have any good arguments, then you should stipulate. If you do, you can do it. But I don't see you as doing that. I see you as saying, we get your claim construction, we think it's wrong, we should win under our claim construction. At a certain point, when the district court has made its claim construction ruling, you can't keep fighting it. That's a waste of time and litigation resources. It either comes up here, or you argue for alternative means for judgment. Isn't that what the district court held, and why is that an abuse of discretion? So, Your Honor, it's an abuse of discretion because the district court's exceptional case ruling says not one word about our doctrine of equivalence argument. Okay, put that aside for now. I'm focusing on the adverse claim construction ruling, because it seemed to me that you continued to litigate your case under a claim construction that the district court explicitly disagreed with. Is that not an exceptional circumstance? It's not, Your Honor. First of all, because you've made clear that a request for reconsideration of a claim construction at summary judgment is one permissible way to go. Yeah, that wasn't what you did here. Here you did a summary judgment motion based on a claim construction that had been rejected by the district court. Well, not solely, Your Honor, and I do have to add doctrine of equivalence because it's very important. We briefed doctrine of equivalence as over a third of the summary judgment motion, and that's in the fees appendix at 3811 to 3815. And, don't take it from me, take it from the district court. The district court rejected our doctrine of equivalence argument in five pages of his fees opinion. Sorry, in five pages of his summary judgment opinion. In the merits appendix at pages A44 to 48, it's a 21-page order. He spends five pages on doctrine of equivalence in the summary judgment order. So, Your Honor, even if you were correct that we shouldn't have fought his claim construction, we made an alternative argument for DOE that he rejected on the grounds I've just argued to you. But one of the problems you may have on that aspect of it is that in the fees motion stuff, I don't think you made the argument with regard to DOE, did you? We did not make it explicitly, Your Honor, and I confess that. What we did do is we referred to the flat-bottom construction, which we did argue. We argued at summary judgment that when the district court said our bottom could be flat, the bottom of our tip could be flat, we said that shows that we, there could be no bell infringement with a flat-bottom with cutting edges, even if the claim construction was right. Now, my friend says in her brief that, oh, well, we didn't really argue flat-bottom for DOE. We argued flat-bottom for literal. And we did both, Your Honor. And this is very important, so I want to give you the exact page. We argued, if you look at the fees appendix at 3914, the fees appendix at 3914. I'd like to commend your attention to the paragraph in the middle, the first full paragraph in the middle, and particularly lines 15 through 17. And that's where you'll see, and Judge Hughes, I think this is responsive to your question, we're taking the part of the claim construction we want, where the court said, well, I look at that tip in figure one and it looks pointy, but I don't find you disclaimed a flat or nubby bottom. And in these sentences, we say STC did not disclaim a radial extending cutting blade, which commences spaced apart from a small dot on an enlarged image of a dental implant, and thus STC is not barred from asserting the doctrine of equivalence by prosecution history estoppel. So, Your Honor, we did two things at summary judgment that I think distinguish us, Judge Hughes, from your hypothetical. Number one, we pressed doctrine of equivalence, and we used the district court's only favorable claim construction for us, that we hadn't disclaimed flat bottoms with cutting edges like Nobel's. And we used that to argue DOE. That's the passage I just cited to you. And second, Your Honor, we also used the one claim construction in our favor, and that's back in the merits appendix at A10. We argued that that district court construction in our favor allowed some ambiguity in his claim construction. There was an inconsistency, we argued, between his saying that the tip could be flat, but the cutting edges had to begin at the exact midpoint. And we tried to exploit that ambiguity with his honor. We did not succeed, but that does not make us an exceptional case. If that were so, that every time a patentee tries to pursue their infringement case after the adverse claim construction by pointing to ambiguities or split babies in the Markman, then we'd have a lot more exceptional fees. And just to your point about discretion, Your Honor, Octane said discretion, but it made very clear that it still has to be an exceptional case out of the mine run of cases. And I think you should hesitate before adopting a rule here or a strong presumption that if you persist after an adverse claim construction in any way that devils with the claim construction, then you're in the exceptional case world. So, Judge Hughes, I might have agreed with you but for the flat bottom claim construction that we won because that's the ambiguity we were trying to exploit on literal infringement. But more important, I think we absolutely made a righteous DOE case. In fact, I know you hear DOE all the time. Yeah, but then we never finished the discussion. Just to circle back to whether or not you kind of pursued that argument by not raising it in your fees motion. Yes, Your Honor. I'm happy to do that. And I think that I'd like to stress a couple of things. First, I wanted to show you that the DOE was well-preserved at summary judgment in our briefing and in the judge's opinion. I don't think we disagree with you on that. What we don't find, or at least I don't find, is where you pointed to that in your opposition to the fees motion as a ground for not finding it in an exceptional circumstance. Understood, Your Honor. So there I would point you to our fees brief at fees appendix pages 6044 and 6045. So these are the pages in which we – pages 6044 and 6055, and in particular, the top of 6055. This is where, Your Honor, again, we're citing and relying on the – 6055 or 6045? 6045, Your Honor. I'm sorry. And at line 2 on 6045, we note, again, the flat-bottom construction in our favor. In so ruling, the Court rejected Nobel's attempt to read the limitation as a bottom surface that is not flat into the 227 patent claims. In other words, Nobel tried and failed to do what we were discussing earlier, say that pointy tip precludes a flat tip, judge ruled for us. And we then said – we went on to argue literal infringement here, but as I just referred you back to the summary judgment briefing, we were always arguing flat-bottom went to DOE as well. So it's an implicit adoption. That's an awful, awful thin read to avoid waiver, isn't it? I mean, it doesn't even use the word doctrinal equivalence, and doesn't this argument apply in both areas? It does, Your Honor. But I think the fact that we briefed it for both areas at summary judgment makes it a fair preservation point here. But I think what's more important, Your Honor, are two things. Number one, Nobel referenced DOE repeatedly in its briefs at the fees and exceptional case ruling. They, in fact, cite their – The fact that they may out of caution address that as no good reason to charge fees doesn't mean that you preserved it if you didn't actually put it in your brief. Well, Your Honor, if I could refer to one more page in the fees appendix. And it's your responsibility to preserve it. It's not preserved. You agree, right? It's not preserved. I do. If they put forth an argument. In a perfect world, do over it would have a great, big heading. But, Your Honor, here what I'm asking you to do is read the district court's obligations in light of octane. And remember, octane says, yeah, discretion, but it still has to be exceptional. And exceptional means in the totality of the circumstances. And I don't think it's unfair in a case where the district court spent five pages in a 21-page summary judgment order to hold the judge responsible for deciding whether pursuing DOE was a righteous thing to do that doesn't warrant exceptional case finding after an adverse claim construction. And, Your Honor, one more point. Nobel wasn't prejudiced. Usually you worry about waiver because of prejudice. And it might have been abundance and caution in the Nobel opening briefs, but they cite doctrine of equivalence again in their fees reply brief at 6114. They respond to us saying, by the way, you also lost doctrine of equivalence at 6114 lines 24 to 26. Furthermore, in those motions, STC failed to acknowledge the evidence from the prosecution history that legally precluded its assertion of infringement under the doctrine of equivalence. Even if, Your Honor, I don't persuade you on doctrine of equivalence, which we think is enough to override the exceptional case holding. And, by the way, I think we're all agreed, the exceptional case holding turns entirely on prosecuting infringement after claim construction. The district court expressly in the fees order at 810 says, I don't think the other litigation conduct assertions rise to the level of an exceptional case. So it lives or dies with this. And I think the district court, having spent a quarter of its summary judgment on an incorrect prosecution history estoppel ruling that robbed us of our doctrine of equivalence argument at summary judgment where my friend may say we didn't bring in experts. How could we? They moved for summary judgment of non-infringement before expert discovery had closed. We should not be foreclosed from resuming the DOE argument on remand. But we certainly shouldn't be penalized where we brought a righteous DOE argument. And so we don't create the deterrence problem that Your Honor describes. Judge Hughes, I don't want to invite people to fight claim constructions. I think we were trying to exploit an ambiguity in the claim construction. But certainly, patentees have a right to pursue DOE after an adverse claim construction. That's what we did. And the district court, in its careful opinions, certainly knew it. Because he spent five pages trying to tell us we disclaimed, through narrowing amendments, something that we never disclaimed. Because what we disclaimed was entirely different longitudinal cutting edges, not radial cutting edges. Your Honor. I'm going to ask you to sit down so you can retain some of your rebuttal time. Thank you, Your Honor. Thank you. I know your position is that they didn't preserve the DOE argument as a basis for avoiding an exceptional case. If they had preserved it, do you think it would be a sufficient ground to avoid exceptional case findings? Because it does seem like it's a, I mean, the district court did carefully examine it. And it's not an unreasonable argument, even if they ultimately lose. Isn't it? Is that the truth? I mean, is it really basically you're relying on waiver here? We're not just relying on a waiver. So in our brief, we also pointed out, both at the district court and on this appeal, that the arguments with regard to prosecution of history estoppel, there was simply no basis to say that there was any sort of tangential or relation exception in response to either of the narrowing amendments. So we pointed that out. We pointed out in the summary judgment briefing that, again, it was incumbent upon appellants to demonstrate an exception to prosecution history estoppel. And if we look at the summary judgment briefing, I believe in this appendix it's 3912 through 3914, just a couple of pages where appellants attempted to demonstrate an exception. The word tangential is never used. There's no explanation of the amendments or the rationale for the amendments. It's attorney argument and citation to the court's Markman order. So we think that their attempt to rebut prosecution history estoppel. The Markman order didn't deal with the DOE, right? The Markman order did not. And so the Markman order addressed prosecution history. And so in opposing our motion for summary judgment where we were saying there is appellants attempted to say that they had somehow rebutted it. But if you look at their arguments and what they cite, an attempt to show an exception to prosecution history estoppel, their citations are two statements that the district court made in his Markman order. So it's our view that, again, given the case law, that it's incumbent upon appellants to demonstrate what the reason was for the amendment and that the tangential relation exception should apply. They simply didn't do that here. But there's a difference, is there, not between the theory of awarding attorney's fees because their summary judgment motion was completely just pushing back on what the district court had already decided on claim construction. That's one thing. Isn't this somewhat different? I mean, this seems to be based on the fact that you think they had a weak argument. We might agree with you, and at the end of the day they lose that. But weak arguments aren't what make for attorney's fees typically. Certainly, Your Honor. And again, in our briefing below, we explained that their persistent disregard for the court's claim construction was one basis for exceptionality, but also the fact that they didn't have any sort of basis to rebut prosecution history estoppel. They made no effort to do that below. So we did make that as a second point supporting exceptionality. And apart from that, we also addressed the lack of proof of their factual analysis of equivalence. And we heard from Ms. Sullivan that they were deprived of an opportunity to make that presentation. If they thought they needed more facts, they could have filed a motion under Rule 56D to ask for more discovery. They could have told the district court, hey, the record is undeveloped here. We need to get an expert. But they didn't. They made their own motion for summary judgment of infringement, and they opposed our motion with attorney argument, no particularized testimony, no linking arguments attempting to show that a particular feature of the Nobel device was equivalent to a particular limitation that was missing literally. So even if there's some sort of argument that there was a weak argument on finding exceptionality, they didn't have a factual analysis of doctrine of equivalence either. And so we do think that that issue also supports a finding of exceptionality here. And again, it was the district court that defaulted the district court for not considering doctrine of equivalence. When that issue was never presented by appellants to oppose the exceptional case motion, we think that is unfair to the district court. Well, except then why don't we move to your cross appeal? Why don't you think that's being unfair to the district court where you're seeking more than his discretion he decided to give you? Sure. And we understand it's a discretionary standard. So the issue that we raised in our cross appeal is that we believe that there were two limitations that were missing from the accused products, one that depended on claim construction, which is the commencing at the generally longitudinal axis, but the extending radially outwardly limitation was there was no construction of that term. No one sought construction. The district court applied a plain and ordinary meaning that limitation and the absence of that limitation was made clear to appellants from the outset of the case, starting with a meeting between council. We included it in our pleadings. We specified in interrogatory responses and there was simply no evidence that appellants ever put forth to explain how the cutting edges on Nobel's implants could possibly be extending radially outwardly. That is a direction. That's a specific direction, which doesn't depend upon how narrow or wide any sort of axis may be. If I have a small circle and I draw a line that extends radially outwardly, that's a direction. If I widen it, as appellants are arguing here, the direction doesn't change. So this limitation, the direction of the cutting edge, is independent of the claim construction dispute we have, and it's not met by the Nobel active implants. The arguments that we heard below and here with regard to how there could possibly be infringement is that because Nobel's products are symmetrical or because the cutting edges end up a radial distance. One end is a radial distance farther out from another. But that's not the construction that the court adopted. Well, that may be a very strong merits argument, and we might very well agree with you, but that doesn't make it outside of the run-of-the-mind cases that we're supposed to look at in terms of finding that the district court abused its discretion in not awarding attorneys' fees. You've made a powerful merits argument. We see those all the time, and attorneys' fees, we don't see very many of those. So really, my question is, so what? Even if we accept everything you said, so what? Why did the district court abuse its discretion by not awarding attorneys' fees for that? We pointed out that this limitation was missing from the outset, and the district court's opinion was very thorough with regard to the commencing at the axis limitation and how that limitation was litigated and appellant's consistent disregard for the court's claim construction after Markman. But he didn't address at all the extending radially outwardly limitation. So his order is simply silent on the analysis of that limitation. So that's what we'd be asking, is that this court, either here on this appeal or a remand to the district court, for him to consider whether appellant's conduct with respect to the extending radially outwardly limitation was also exceptional. Are we talking about a great deal of money here? I mean, there's no trial. We're talking about portions of briefs that were filed, right? So there was an eight-month period of activity before the Markman hearing, and unfortunately, during that time, there were quite a few discovery disputes as reflected in our fee brief. There were depositions and things like that. So it was an active litigation. But then the district court would have to slice and dice those to see how much of that was dedicated to the argument you're making here, to that piece of the argument. If that's what you want him to do, you want us to remand it to him so he can slice and dice the costs associated with one argument versus another over an eight-month period? Well, our argument is that this case should never have been brought because there has not been and has never been any evidence that Nobel infringes the extending radially outwardly limitation. That limitation did not depend on claim construction. Appellants didn't need to get the Markman ruling to appreciate that they had no case. They had no case from the outset. So it's our view that the finding of exceptionality would encompass the entirety of the litigation, not just the period after Markman. Okay, thank you. Thank you. Your Honor, quickly on the cross appeal, you should reject the cross appeal. The district court was well within its discretion to, at a minimum, deny attorneys' fees for the period preceding the claim construction. And my friend's reference to extending radially outward, which was not construed at Markman, is unavailing because the claim term is extending radially outward from said axis. So as Chief Judge Crowe said at the outset of the merits argument, everything in this case turns on the claim construction of generally longitudinal axis. So this is Pitney Bowes all over again. We cite Pitney Bowes in our brief. This is a case in which the extending radially outward term depended on the construed claim generally longitudinal axis. There should be no fees for the period preceding claim construction. And in any event, the Nobel patent does extend radially outward, or we should have a chance to prove it. It extends radially, not longitudinally. I suggested to Judge Lynn those are our two options here. And it extends outwardly because the end point of the cutting edge is farther from the center than the beginning point. That's outwardly in my book. So unconstrued, we had a perfectly righteous reason to bring our claim. Second point, Your Honor, on the appeal. I just want to focus. I want to answer something incorrect that my friend said. My friend said that we hadn't argued tangential relationship exception to Festo. At summary judgment, that is false. If you look at page 3913, Fees Appendix 3913, she referenced 3912 and 3913. Dead center of the page, I see line 15 citation to Festo. This is Spitz's opposition to Nobel's summary judgment motion. She said we didn't mention tangential relationship. I see Festo at line 15. I see InterVet at line 18. And I see the parenthetical to InterVet, which is the case we most rely on here, saying only a tangential relation. So dead to rights, we argued tangential relation. That's the summary judgment opposition, Your Honor. And I recognize that you think that I had to do a couple of six degrees of separation from the fees brief back to that, but I showed you how you can do it because we argued flat bottom. So, Your Honor, we respectfully suggest that you should rule for us on claim construction, send the case back to begin the infringement case over again with the correct claim construction, and therefore vacate the entire attorney's fee award. You certainly shouldn't grant the cross appeal for additional fees, half a million dollars for a case that got to summary judgment. You certainly shouldn't grant the cross appeal. But with respect, we think even if you deny our claim construction arguments, which we respectfully suggest you should not do, you should wipe out the half a million dollars in attorney's fees. That's not an exceptional case given all the distinctions I've made from cases that meet that standard. Thank you very much for your patience in listening to both arguments, Your Honor. Technically, you've got some time reserved, and Ms. Sullivan did respond to your argument. So if you want to take a minute to respond, I don't know that you think it's necessary. This is just on your cross appeal. Understood, Your Honor. We heard from counsel that radial and longitudinal are somehow binary, and there was no other way to narrow the claim other than to say radial. We explained in our brief that there were other ways to narrow the claim. They could have simply said that the cutting edges do not extend in a longitudinal direction, but they didn't do that. They chose to specify the direction of the cutting edge, and they specified it as being radial. And so, again, we do believe that that's a narrowing amendment that gives rise to prosecution history estoppel. With regard to the tangential argument, again, if you read those briefs, 3912 to 3913, there's no discussion of the file history. There may be a citation to a case that says that the tangential exception may be available, but certainly no analysis of how that would apply here. And then, finally, the Pitney Bowes case that counsel cited, in that case, the term, I think it was spots of different sizes, was derivative of another term. It did depend on it. But, again, as we have explained, extending radially outwardly is a direction. It doesn't depend on how fat I make the axis. It's the direction in which the cutting edge extends. Okay. Thank you. Thank you. We thank both sides and the cases submitted. Thank you.